

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LILLIE M. LILLIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 04 C 5453 |
| | ) |
| CHARTWELLS, a division of | ) Wayne R. Andersen |
| COMPASS GROUP, an Illinois | ) District Judge |
| corporation, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the motion of Defendant, Chartwells, a division of

Compass Group USA, Inc., ("Chartwells") for summary judgment pursuant to Fed.R.Civ.P. 56.

For the reasons stated below, the motion is granted.

## BACKGROUND

Chartwells contracts with school districts to provide food service operations. Each

school district account is managed by a Director of Dining Services ("Director"), who oversees

all food service operations and is responsible for ensuring that operations perform according to

budget. The Directors report to a District Manager, who in turn reports to a Regional Vice

President.

Lillie became Director of the Wheaton-Warrenville School District account in Wheaton,

Illinois on November 18, 2000. Like all new Directors, Lillie attended a comprehensive training

program. In addition, during her first months on the job, Lillie received at least 14 visits from

members of Chartwells' management staff who offered Lillie their expertise and resources.

Despite the training and support she received, Lillie began experiencing performance

problems almost immediately. The extent of those problems was revealed in November 2001, when a routine audit of Lillie's account uncovered numerous financial irregularities. Chartwells' auditor, Lynne Pellegrino, worked with Lillie to address those issues, but problems persisted.

In January 2002, Chartwells hired Joe Arvia ("Arvia") for the position of District Manager. Arvia was responsible for ensuring that Lillie's account and others ran according to budget. Arvia soon discovered that Lillie's food costs were unusually high. Because food costs are a key factor in meeting a budget, Arvia was concerned and offered Lillie tools to address the issue. When that proved unsuccessful, Arvia directed Lillie to provide him with weekly reports so he could help Lillie control her costs. Lillie, however, did not submit reports as directed.

Despite Arvia's best efforts, the finances for Lillie's account spun out of control. In May 2002, Arvia met with Lillie to reaffirm his intention of helping her succeed. At that meeting, Arvia asked Lillie to register for any additional training that she wanted and told Lillie that he was hiring an Assistant Director for her. Arvia also warned Lillie that her failure to improve her performance could lead to termination. Nevertheless, Lillie continued to disregard Arvia's offers of support. When the fiscal year came to an end, Lillie's account was running a sizeable deficit.

Lillie began the next fiscal year with a clean slate, but her account experienced financial trouble within weeks. As a result, Arvia issued Lillie a written warning. In addition, Arvia and Chartwells Regional Vice President Bruce Norman ("Norman") convened a meeting with Lillie to help her gain control of her finances on October 16, 2002. Arvia and Norman told Lillie that her performance was unacceptable and could result in her termination if not corrected. Arvia and Norman also offered Lillie their support in helping her achieve her budgeted goals, and even offered to help Lillie reforecast her budget. Finally, Arvia and Norman directed Lillie to submit

2

an action plan and weekly status updates so that they would be better able to help her.

Lillie declined these offers of support, including Arvia's offer to help Lillie reforecast her budget. Furthermore, Lillie refused to submit the action plan or reports that were requested. Accordingly, Arvia issued Lillie another written warning in December 2002, which stated that Lillie's failure to improve would result in her termination.

In spite of Norman and Arvia's repeated efforts to help Lillie improve her performance, Lillie's finances slid further into the red. Arvia grew alarmed and ordered a second audit of Lillie's account in March 2003. This follow-up audit revealed numerous financial problems with the account, including issues that Lillie had verified were addressed after the audit in 2001.

By June 2003, it was clear that Lillie was going to finish the fiscal year with a huge deficit. Based on Lillie's continued poor performance and failure to improve, Chartwells discharged Lillie's employment.

## DISCUSSION

A court will grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The court must consider the evidence in the light most favorable to the opposing party, and the movant bears the burden of establishing a lack of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

To avoid summary judgment, the non-moving party may not rest on the pleadings, but must affirmatively demonstrate, by specific factual allegations supported by the record, that there is a genuine issue of material fact for trial. *Oest v. Ill. Dept. of Corr.*, 240 F.3d 605, 610

3

(7th Cir. 2001).

In this case, Lillie alleges that Chartwells discriminated against her on the basis of her age and gender. Lillie also alleges that Chartwells retaliated against her for filing internal complaints against Arvia and a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

Lillie can raise an issue for trial for any of her claims in one of two ways: she can present direct evidence that Chartwells had an unlawful motive for its decision, or she must rely on the indirect burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Davis v. Con-Way Transp. Central Express, Inc.*, 368 F.3d 776, 786 (7th Cir. 2004); *Peele v. Country Mut. Ins., Co.*, 288 F.3d 319, 326 (7th Cir. 2002).

As Lillie has no direct evidence of discrimination or retaliation, she must use the *McDonnell-Douglas* standard.[1] To establish a *prima facie* case of discrimination or retaliation under *McDonnell-Douglas*, a plaintiff must show that: (1) she belongs to a protected group or engaged in protected activity; (2) her performance met her employer's legitimate business expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated individuals outside of her protected class more favorably. *Davis*, 368 F.3d at 786; *Peele*, 288 F.3d at 326. If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to articulate a legitimate business reason for its decisions. *Davis*, 368 F.3d at 786. Once the employer has done so, the burden shifts back to the plaintiff to establish that the explanations offered by the employer are a "pretext" for intentional discrimination, or, put

---

[1]Direct evidence "requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). *See e.g., Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1122 (7th Cir. 1998)(supervisor's remark that plaintiff is "getting old" did not qualify as direct evidence of discrimination because it was unrelated to the termination decision).

4

another way, a lie. *Id.*

While Lillie does seem to meet the first and third factors of the *McDonnell-Douglas* test, the undisputed facts show that Lillie cannot establish a *prima facie* case of discrimination or retaliation for the following reasons: 1) Lillie admits that she was not meeting Chartwells' legitimate business expectations; 2) Lillie has no evidence that Chartwells treated a similarly situated employee more favorably; and 3) Lillie has no evidence that Chartwells' legitimate, non-discriminatory reason for discharging her was a pretext. Under these circumstances, summary judgment for Chartwells is appropriate.

## I. Lillie Cannot Show a *Prima Facie* Case of Discrimination or Retaliation.

### A. Lillie Was Not Meeting Chartwells' Legitimate Business Expectations.

Lillie cannot establish that she met Chartwells' legitimate expectations, a fundamental element of her *prima facie* case. Rather, the undisputed facts show that Lillie repeatedly missed her budget by thousands of dollars and took no steps to improve her performance.

Chartwells evaluates its Directors' performance by their ability to meet the profit goals set forth in their annual budgets. To achieve those profit goals, Directors must keep their food costs at prescribed levels. Typically, a Director's food costs should not exceed 45 percent of the total food sales generated by the account. Lillie's food costs, however, routinely exceeded this mark by as many as 20 percentage points. As a result, Lillie finished the 2001-02 fiscal year with a large deficit and was several months away from finishing the 2002-03 fiscal year with an even larger deficit when she was discharged.

A manager like Lillie, who admits that she failed repeatedly to meet Chartwells' budget objectives for two years, cannot raise an issue of fact that she met her employer's legitimate business expectations. *See e.g., Robin v. ESPO Eng'g Corp.*, 200 F.3d 1081, 1090-91 (7th Cir.

5

2000)(employee who missed sales goal was not meeting his employer's expectations); *Cowan v. Prudential Ins. Co. of America*, 141 F.3d 751, 760 (7th Cir. 1998)(employee with chronically low sales was not meeting employer's expectations); *Skouby v. Prudential Ins. Co. of America*, 130 F.3d 794, 798 (7th Cir. 1997)(plaintiff's poor financial performance showed she was not meeting employer's expectations); *Manning v. Univ. of Chicago*, 401 F.Supp.2d 858, 865 (N.D. Ill. 2005)(several years of expressed dissatisfaction by an employer with an employee's performance "precludes anypossibility" of showing she was meeting legitimate expectations).

In this case, Lillie does not dispute that her performance was substandard. Specifically, Lillie admitted that she failed to meet her budget, and her account was in crisis as a result. Therefore, there is no issue of material fact as to Lillie's inablity to meet Chartwells' expectations because she failed to meet her budget on numerous occasions.

In addition to not meeting her budget, Lillie also failed to meet Chartwells' standards because she could not, or would not, improve her performance. In an effort to help Lillie meet her goals, Chartwells required Lillie to submit an action plan and weekly status reports. Lillie submitted an action plan several months late, and she rarely submitted weekly updates. An employee who fails to respond to her employer's legitimate requests is not meeting its legitimate expectations. *See, e.g., Contreras v. Suncast Corp.*, 237 F.3d 756, 761 (7th Cir. 2001)(insubordinate employee not meeting legitimate expectations); *Porties v. Gen. Elec. Co.*, No. 02-C-3995, 2004 WL 1151594, at *6 (N.D. Ill. Apr. 28, 2004)(employee placed on action plan and failed to provide information requested by management was not meeting legitimate expectations). Thus, Lillie failed to meet Chartwell's legitimate expectations by failing to improve her performance.

In sum, Lillie's admissions and the undisputed evidence show that she failed to meet

6

Chartwells' legitimate business expectations. Because she cannot raise an issue of material fact on this essential element of her claim, Lillie's discrimination and retaliation claims fail as a matter of law.

        B.    Lillie Cannot Identify a Similarly Situated Employee Who Was Treated More Favorably.

In addition to her failure to meet Chartwells' legitimate business expectations, Lillie also cannot establish the fourth element of her *prima facie* case—that Chartwells treated a similarly situated employee more favorably. A similarly situated employee must be similar "in all material respects." *Peele*, 288 F.3d at 330. There must be a substantial similarity so as to create the inference that discriminatory intent is the reason for differing treatment. *Spath v. Hayes Wheels Int'l*, 211 F.3d 392, 397 (7th Cir. 2000).

In cases when a plaintiff claims that she was treated more harshly than a similarly situated employee because of some prohibited reason, the plaintiff must show that she is similarly situated with respect to performance, qualifications and conduct. *Peele*, 288 F.3d at 330. Typically, this entails a showing that the two employees dealt with the same supervisor, were subject to the same standards and had engaged in similar conduct without mitigating circumstances that would distinguish their conduct or the employer's treatment of them. *Id.*

Lillie contends that three employees— Monica Winer, Jeremy Rich and Joe Arvia—were treated more favorably than her because of their age or gender.[2] However, not one was similarly situated to Lillie. Consequently, Lillie's *prima facie* cases of discrimination and retaliation fail.

---

[2]Lillie has not identified a comparator for her retaliation claim.

7

### 1. Monica Winer.

In her deposition, Lillie pointed to her Assistant Director, Monica Winer ("Winer"), as a comparator for her age discrimination claim. But Lillie's attempt to draw similarities between herself and her subordinate fails because supervisory plaintiffs are not similarly situated to their subordinate employees. *See, e.g., Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)(holding that it is "next to impossible" for a supervisor to show that she was similarly situated to her subordinate); *Hoffman-Dombowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 651 (7th Cir. 2001)(holding that employees with different job titles and responsibilities were not similarly situated); *Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1124 (7th Cir. 1998)(holding that manager was not similarly situated to lower-level employees).

It is undisputed that Lillie was the direct supervisor of Winer. It is also undisputed that Lillie had a different job title and dramatically different job responsibilities than Winer. Therefore, Lillie cannot be similarly situated to Winer as a matter of law.

### 2. Joe Arvia

In her response brief, Lillie compares herself to her supervisor, Joe Arvia, for the first time as a comparator for her age discrimination claim. There is no dispute that Arvia was a District Manager and was Lillie's supervisor. Lillie's attempt to draw comparisons between herself and her supervisor, Arvia, fail for the same reasons as her attempt to compare herself to Winer, her subordinate. The standard of performance for a supervisor is different than for a subordinate. *See Romanowski v. Lucent Tech., Inc.,* No. 01-8360, 2002 WL 31641609 at * 7 (N.D. Ill. Nov. 22, 2002). Therefore, this comparison fails as a matter of law.

### 3. Jeremy Rich.

In addition, Lillie claims that she was similarly situated to Jeremy Rich, another Director,

8

for purposes of both her age and gender discrimination claims. This claim fails as well · it is well-established that two employees with substantially different job performance records are not similarly situated in all material respects. *See, e.g., Peele,* 288 F.3d at 330 (holding that an employee who received numerous critical evaluations was not similarly situated to colleagues who received positive performance reviews); *Aylward v. Hyatt Corp.,* No. 03-C-6097, 2005 WL 1910904, at *10 (N.D. Ill. Aug. 5, 2005)(holding that an employee was not similarly situated to a colleague whose account was twice as profitable).

Lillie and Rich had totally dissimilar performance records at the time of her discharge in 2003. Simply put, Rich managed a profitable account. By contrast, Lillie's account hemorrhaged money, and she routinely ignored orders intended to help her improve. While Lillie contends that Rich was not meeting his budget in 2003, she does not cite to one piece of evidence that suggests Rich failed to meet his budget. It is well-established that unsupported assertions of fact are insufficient to defeat summary judgment. *See, e.g., Ilbart v. Sara Lee Corp.,* 118 F.3d 1151, 1152, n.1 (7th Cir. 1997). Moreover, in her deposition, Lillie testified that she did not know whether Rich made his budget in 2003.

Lillie also argues thaty she was similarly situated to Rich because he failed to meet his budget goals in 2004, the year after Lillie was discharged. This argument likewise fails because, in determining whether two employees are similarly situated, the inquiry must focus on the time of the job action at issue, not one year later. *See, e.g., Jordan v. City of Gary, Ind.,* 396 F.3d 825, 834 (7th Cir. 2005).

Moreover, Rich's performance in 2004 was not comparable to Lillie's. In his first year as Director of Dining Services at Wheaton, Rich came $ 80,000 closer to meeting his budget than Lillie had at the time of her discharge. Arvia characterized these results as an

9

"improvement" over Lillie's performance. Consequently, Lillie cannot establish that she and Rich were similarly situated in all material respects.

Finally, Lillie's claims that Rich received more preferential working conditions and training than she did are also unsubstantiated. Lillie admits that there is no evidence that Rich recived one-on-one training. Moreover, Lillie's admission that she declined Arvia's offer of one-on-one budget training undermines any claim that she did not receive sufficient training. Lillie only speculates as to the other preferential treatment Rich allegedly received, and speculation and conjecture is not enough to defeat summary judgment. *See, e.g., McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004).

For these reasons, Lillie's attempt to use Jeremy Rich as a similarly situated employee who received more favorable treatment fails.

### C. Lillie Cannot Establish That Chartwells' Reason for Terminating Her Was a Pretext for Discrimination or Retaliation.

Lillie's claims of retaliation and discrimination also fail because Chartwells has articulated a legitimate business reason for its actions. Chartwells terminated Lillie because of her poor financial performance. Given Lillie's admittedly poor performance, there is no material dispute that Chartwells legitimately terminated Lillie.

To successfully refute Chartwells' legitimate business reason, Lillie must present admissible evidence that Chartwells' reason for terminating her "was a lie contrived to mask unlawful discrimination." *Little v. Ill. Dept. of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004). Accordingly, the ultimate issue is whether Chartwells honestly believed that Lillie's discharge was warranted based on her admitted performance problems. *Id.*

10

Lillie attempts to establish a triable issue of pretext in four ways. First, Lillie contends that Chartwells' budget expectations were unreasonable. Second, Lillie asserts that Chartwells failed to train her. Third, Lillie maintains that Arvia criticized her and micro-managed her. Fourth, Lillie alleges that Arvia made a stray remark about her age over a year before her termination. Because none of Lillie's arguments cast doubt on the sincerity of Chartwells' reasons for her discharge, summary judgment is appropriate.

1.  Lillie Has Not Shown That Chartwells' Budgeting Process Creates a Triable Issue of Pretext.

Lillie contends that her budgets were not a fair measure of her performance because they were created without her input and they set unreasonable expectations. Lillie's argument is based solely on her personal belief that Chartwells' budgeting process was unfair.

A plaintiff cannot raise a material issue of pretext by challenging her employer's good-faith performance expectations. *Holmes v. Potter*, 384 F.3d 356, 361-62 (7th Cir. 2004); *Robin*, 200 F.3d at 1090. An employee can only establish that her employer's performance expectations were a pretext for discrimination or retaliation by showing that those expectations were dishonest. *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997).

Lillie has no evidence to show that Chartwells did not honestly expect every Director to meet their budget. Indeed, Chartwells views an account's financial performance as a key measure of a Director's performance. Lillie does not dispute that —to the contrary, she admits that Chartwells required every Director to "live with" their budget.

Furthermore, Lillie has offered no evidence to suggest that the budgeting process was unfair. Chartwells used the same process to create every Director's budget, Lillie's included.

11

Every spring, Arvia invited the Directors to gather as a group to develop draft budgets. The amount of input each Director had was limited because budgets were driven essentially by the size of the account. Once a draft was prepared, Chartwells' management reviewed it and issued a final version.

Lillie has offered no evidence to suggest that Chartwells gave her fewer opportunities than other Directors to participate in the budgeting process. If anything, Lillie had more opportunities because Arvia offered to help Lillie reforecast her budget. Lillie, however, declined Arvia's offer. Because there is no proof in the record that Chartwells created Lillie's budget in bad faith or set dishonest performance expectations, Lillie's complaints about the reasonableness of her budget do not raise a material issue of pretext.

2.    Lillie Cannot Show That Chartwells Denied Her Training.

Lillie also claims that Chartwells' performance expectations were a pretext because the company set her up to fail by denying her budget training. Lillie's argument is based solely on her unsupported belief that she received insufficient training and that Jeremy Rich received one more afternoon of budget training than she did. This is not enough to justify a finding of pretext. *See, e.g., Malacara v. City of Madison*, 224 F.3d 727, 730 (7th Cir. 2000)(plaintiff who alleged failure to train but who had previously received related training could not establish pretext); *Williams v. Nalco Chem. Co.*, No. 91-C-5621, 1992 WL 51672, at *3 (N.D. Ill. Mar. 5, 1992)(plaintiff who offered no evidence that he received unequal training had not established pretext).

In *Williams*, the defendant demoted the plaintiff for poor performance and failure to meet his improvement goals. *Williams*, 1992 WL 51672, at *2. The plaintiff argued that the employer's explanation for the demotion was a pretext because plaintiff received less training

12

than other employees. *Id.* In granting summary judgment for the employer, the court found that the plaintiff was in fact given opportunities to train and that the plaintiff's self-serving and conclusory allegations could not establish "that he received an unequal amount of training." *Id.* at *3. Following a similar logic, the court in *Malacara* granted the employer's motion for summary judgment because the plaintiff had previously received training and had offered no evidence that similarly situated colleagues were treated differently. *Malacara*, 224 F.3d at 730.

Like the plaintiffs in *Malacara* and *Williams*, Lillie did in fact receive substantial training. When she began with Chartwells, Lillie attended the same comprehensive training that all Directors attend and was visited by staff who offered her training and a variety of resources on at least 14 occasions. In addition, Lillie worked with an auditor from Chartwells to address various finance issues. Also, Lillie earned numerous training certificates during her career.

Furthermore, Arvia told Lillie to enroll in more training, a fact that Lillie acknowledged at her November 2002 performance review. Lillie also acknowledged during that review that there were no obstacles preventing her from achieving Chartwells' goals. Accordingly, Lillie cannot now allege that Chartwells set her up to fail.

Nor can Lillie show that Arvia provided Jeremy Rich with more training. As mentioned earlier, Lillie admits that she does not really know whether she received less training than Rich. Even if Rich had received one more training session than Lillie, she admits that she had declined a similar offer from Arvia to work on her budget. This admission by Lillie is absolutely fatal to her claim. *See, e.g., Pafford v. Herman*, 148 F.3d 658, 668 (7th Cir. 1998)(plaintiff's failure to identify a similarly situated employee who received more training than her precluded her claim); *Nobles v. Nalco Chem. Co.*, No. 01-C-8944, 2004 WL 419900, at *10 (N.D. Ill Mar. 3, 2004)(same); *Qualls v. Radix Group Int'l, Inc.*, No. 98-C-2695, 1999 WL 1267716, at *6 (N.D.

13

Ill. Nov. 17, 1999)(same).

Because Lillie has no evidence that Arvia denied her training or lied when he terminated her for not meeting expectations, Lillie cannot establish a triable issue of pretext.

### 3. Lillie Was Not Understaffed

In her response brief, Lillie contends for the first time, that Lillie was understaffed which caused her to be overworked. Lillie appears to allege that Chartwells only assigned her one Assistant Director of Dining Services and that she only had access to one administrative assistant on a periodic basis. However, neither of these allegations are supported by record evidence.

Lillie admits that, shortly after Arvia accepted his position as District Manager, he assigned an Assistant Director of Dining Services, Winer, and an Administrative Assistant, Trinidad, to Lillie's district. Trinidad remained Lillie's Administrative Assistant through Lillie's discharge, which means that Lillie was never without administrative support. Lillie also had constant access to an Assistant Director of Dining Services. Although Winer resigned in 2003, Arvia immediately replaced her with another Assistant Director, Jai Widder. As such, Lillie had access to both an Administrative Assistant and an Assistant Director throughout her tenure as Director.

Moreover, Lillie has not identified a single Director of a comparable school district who was assigned more than one Assistant Director and one Administrative Assistant. Lillie's inability to show that Chartwells treated her less favorably than any other Director of Dining Services prevents her from raising a material issue of pretext.

### 4. Lillie Cannot Establish That Arvia's Management Style Creates a Material Issue of Pretext.

In addition, Lillie asserts that Arvia's management style supports her claim that she was

14

terminated because of her age or gender, or because she complained about Arvia. Specifically, Lillie claims that Arvia micromanaged her by: (1) forcing her to work late hours; (2) assigning her extra duties that increased her workload; (3) giving her assignments with short deadlines; and (4) making business decisions that affected her account without requesting her input. Lillie also alleges that Arvia once unfairly criticized her but not Lillie's Assistant Director, Monica Winer, and another time gruffly ordered Lillie to "take care of" her outstanding invoices. But Lillie offers no evidence to suggest that Arvia's management style was motivated by improper animus—thus, she cannot raise a triable issue of pretext.

Courts have held that a supervisor can criticize and micromanage a subordinate and it will not be actionable absent evidence of discriminatory animus. *See, e.g., Griffin v. Potter*, 356 F.3d 824, 829-30 (7th Cir. 2004)(plaintiff's allegations that supervisor made unpleasant comments, gave additional work and unfair discipline were not actionable); *Pollard v. Rea Magnet Wire Co., Inc.*, 824 F.2d 557, 560-61 (7th Cir. 1987)(Title VII does not prohibit a supervisor from engaging in "medieval" or "high-handed" management practices); *Swanson v. Gen Serv. Admin.*, 110 F.3d 1180, 1185-86 (5th Cir. 1997)(supervisor's hostile and unpleasant working relationship with plaintiff was not actionable); *Toney v. Montgomery Job Corps.*, No. 2:03-CV-1233-MHT, 2006 WL 691188, at *12 (M.D. Ala. Mar. 15, 2006)("Title VII does not provide a right to a pleasant environment, but only a right to a workplace that is free of discrimination"); *Beverley v. 1115 Health & Benefits Fund*, 420 F.Supp.2d 47, 59-60 (E.D.N.Y. 2005)(supervisor who acted unprofessionally and micromanaged staff did not retaliate against plaintiff).

For example, in *Galvin v. Catholic Bishop of Chicago*, 863 F.Supp. 770, 776-77 (N.D. Ill. 1994), the plaintiff was terminated for lacking technical skills and training. The plaintiff alleged

15

that her supervisor's belittling and controlling management style showed that her termination was discriminatory. *Id.* at 776. In granting summary judgment for the defendant employer, the court found that the supervisor's conduct, while "paranoid, demanding, and less than tactful," was unrelated to the plaintiff's race or gender and, therefore, not discriminatory. *Id.* at 776-77.

Like the plaintiff in *Galvin*, Lillie has not demonstrated that Arvia's management style was motivated by improper animus—in this case, Lillie's age, gender or complaints. Specifically, Lillie has offered no evidence that she was treated differently than a similarly situated Director. Without such evidence, there is nothing about Arvia's alleged conduct to suggest that it was discriminatory or retaliatory. *See, e.g., Pollard,* 824 F.3d at 560-61; *Swanson,* 110 F.3d at 1185. Consequently, Lillie has not shown that Arvia's explanation for her discharge was a pretext.

        4.     <u>Lillie Cannot Rely Solely on an Alleged Stray Remark to Show Pretext</u>.

Finally, Lillie tries to establish a material issue of pretext by alleging that Arvia told her over a year before her discharge that she was "getting up there in age" and "may want to step down." Arvia denies making this remark. However, even crediting Lillie's version of events, this allegation alone cannot raise an issue for trial. Stray remarks that are neither related to, nor a proximate cause of, plaintiff's termination, standing alone, cannot defeat summary judgment. *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1116 (7th Cir. 1992).

As previously discussed, Lillie has not offered any probative evidence of pretext to supplement her allegation that Arvia made a stray remark. Therefore, Lillie's claim fails as a matter of law. *See e.g., Hull v. Paige Temp. Inc.,* No. 04-C-5129, 2005 WL 3095527, at *14-15 (N.D. Ill. Nov. 16, 2005)(stray remark that supervisor "was going to build her company on sturdy young legs," made three months before plaintiff's termination, did not establish pretext);

16

*Turner v. Chicago S.D.A. Acad.*, No. 97-C-1505, 1998 WL 808993, at *6 (N.D. Ill. Nov. 17, 1998)(stray remark that employer is "going to get a younger man to work there [because] . . . you are getting up there in age," made four months before plaintiff's termination, did not establish pretext.).

For these reasons, Lillie has failed to show that Chartwells' stated reasons for her discharge are a pretext for discrimination.

## CONCLUSION

For the reasons set forth above, Defendant Chartwells' motion for summary judgment (# 16) is granted. Judgment is hereby entered in favor of Defendant Chartwells on all counts of the Complaint. This is a final and appealable order.

It is so ordered.

Wayne R. Andersen
United States District Court

**MAR 2 6 2007**

Dated: _____

17